No. 99-456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 75

299 Mont. 123

999 P. 2d 306

IN RE THE MARRIAGE OF

SANDRA KAY DELUDE,

Petitioner and Respondent,

and

RANDALL ALLEN DELUDE,

Respondent and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Thomas A. Olson, Judge Presiding

COUNSEL OF RECORD:

**For Appellant:**

Kerry N. Newcomer, Geiszler & Newcomer, P.L.L.P., Missoula, Montana

**For Respondent:**

Jeannette Ellen Berry, Attorney at Law, Bozeman, Montana

Submitted on Briefs: February 10, 2000

Decided: March 23, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1. Randy DeLude moved the Eighteenth Judicial District Court, Gallatin County, to compel his ex-wife, Sandy Black, to solely assume a business loan pursuant to their divorce decree and the parties' property settlement agreement. In its findings of fact, conclusions of law and order, the District Court denied Randy's motion based on Sandy's reasonable, yet unsuccessful, efforts to remove Randy from the loan. Randy appeals; however, we conclude that this matter is not appealable.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2. Randy DeLude and Sandy DeLude, now known as Sandy Black, entered into a property settlement agreement which was fully incorporated by reference in the District Court's findings of fact, conclusions of law and decree of dissolution. In part, the property settlement agreement provided that Sandy would acquire the parties' restaurant, known as Azteca and located in Bozeman, and also would assume the loan associated with it. The pertinent language in the agreement is as follows:

a. The parties agree that the business is valued at approximately $100,000. The parties currently owe $76,297 on the loan for the business with Mountain West Bank of Helena. The parties have approximately $23,703 in equity in the business.

b. The wife shall receive sole right, title and interest in and to the parties' business . . . and wife shall solely assume the business loan, releasing the husband from all liability therefrom, and she shall indemnify him and hold him harmless from said loan.

c. A draft of the agreement read that Sandy "shall make every effort to" solely assume the loan and release Randy from all liability. Randy says that he struck out the words "make

every effort to," initialed the change, and that Sandy also initialed the change before she signed the agreement.

¶3.After receiving a past due notice on the loan from Mountain West Bank, Randy filed a motion to compel Sandy to secure his release from the joint obligation. Randy also requested attorney fees and costs incurred in bringing this motion pursuant to the following language of the parties' property settlement agreement:

a.Should any action be commenced to enforce any provisions contained herein, the Court, as a cost of suit, shall award a reasonable attorney's fee to the successful party.

¶4.A hearing on the motion was held at which only Randy and Sandy testified. Sandy informed the court that she had experienced a series of complications in assuming the Azteca loan. When she originally contacted Mountain West Bank during the last quarter of 1998, they told her they would need to see her 1997 and 1998 tax returns. In January 1999 she found out she had cancer and traveled to Seattle to undergo surgery. After she returned to Montana, she learned the surgery was not successful; plus, she fell and dislocated her knee cap. Sandy returned to Seattle in April for cancer surgery, and two weeks later had knee surgery. Sandy testified that sometime in May 1999 she made application to five banks to refinance the Azteca loan. Evidence shows that she was denied by three of the banks, and Sandy testified she had not heard from the other two. At the time of trial, Sandy was in disagreement with Mountain West Bank and had not yet provided them her tax returns. Nonetheless, Sandy made regular payments on the loan and testified she would continue to do so.

¶5.Randy testified that he spoke to Mountain West Bank himself about releasing him from the Azteca loan, but that the bank wanted to talk to Sandy personally. Randy alleges that because his name still is on the loan, he has been denied credit to pursue his own business ventures. At trial, he suggested that he was denied over a million dollars in construction loans. At the same time, his testimony also revealed that he received $355,000 in loans from Mountain West Bank since the first of 1999 to purchase a residence and a duplex. Randy produced no documentary evidence that he was denied the construction loans. Sandy's attorney questioned whether Randy was denied the construction loans because his average monthly gross income as a subcontractor was only $5,000.

¶6.Taking into consideration Sandy's medical problems, her prompt but unsuccessful efforts to remove Randy's name from the loan, and the fact that she has kept the loan

current except for one late payment, the District Court did not hold Sandy in contempt of court and denied Randy's request for attorney fees and costs. At hearing, the District Court ordered Sandy to try to assume the loan at Mountain West Bank by providing her 1998 tax return. In its written order, the court concluded that because it is solely within the control of the bank whether Randy's name is removed from the loan, Sandy should not be held in contempt.

## DISCUSSION

¶7.As a general rule, contempt orders are final and not reviewable by this Court except by writ of certiorari. *See* § 3-1-523, MCA. However, until a recent case, *Marriage of Lee*, 2000 MT 67, 57 St.Rep. 308, we have acknowledged a general exception in family law cases to review contempt orders on appeal.

¶8.In *Lee*, we recognized a conflict between two distinct, yet conflicting, lines of authority: one following the clear mandate of § 3-1-523, MCA, and the other which has allowed for the "family law" exception. Reconciling these cases, we stated that while the need for a direct appeal approach in some family law cases is warranted, it would be poor public policy to create circumstances in all family law cases whereby a district court's contempt power in enforcing the rights of the parties before it is diminished by one party's ability to file a direct appeal that in turn frivolously and needlessly delays the mandate of the district court's order. *Lee*, ¶ 34. We concluded that the "family law" exception applies most appropriately in cases in which an order of contempt not exceeding the issuing court's jurisdiction is accompanied by an ancillary order which affects the substantial rights of the parties involved. *Lee*, ¶ 37. On this basis, we held that a lone contempt order in a family law case cannot be reviewed by this Court on direct appeal. *Lee*, ¶ 37.

¶9.In light of our recent decision in *Lee*, we conclude that in the case *sub judice* the District Court's decision to deny Randy's motion is not an appealable matter. In its order, the District Court denied Randy's request to hold Sandy in contempt, denied Randy's request for attorney fees incurred in bringing the motion, and ordered Sandy to do what she could to remove Randy's name from the Azteca loan, which already was required pursuant to the parties' property settlement agreement and divorce decree. The District Court did not issue an ancillary order affecting either party's rights. Thus, we do not consider Randy's appeal.

## /S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER